01

02

03

04

05

06 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
07 AT SEATTLE

08 PONCIANO AUSTRIA,                    )    CASE NO. C09-0347-RSM
                                        )
09        Petitioner,                   )
                                        )
10        v.                            )    REPORT AND RECOMMENDATION
                                        )
11 PAT GLEBE,                           )
                                        )
12        Respondent.                   )
   _____ )
13

14        Petitioner Ponciano Austria is an inmate at Stafford Creek Corrections Center in

15 Aberdeen, Washington.   Proceeding *in forma pauperis*, Mr. Austria filed a *pro se* 28 U.S.C.

16 § 2254 petition for a writ of habeas corpus to challenge his conviction for taking indecent

17 liberties by forcible compulsion with a thirteen year-old girl.   Having considered the parties'

18 briefs and the record, the Court recommends that the habeas petition (Dkt. 9) be denied.

19                              **BACKGROUND**

20        The Washington Court of Appeals summarized the facts underlying Mr. Austria's

21 conviction:

22        Thirteen-year-old MS was at home with her cousin, Rowena

Lomboy, watching two young children. Natie S., MS's mother, ran a day care in her home and had left MS and Lomboy with the children while she ran errands. Lomboy was in the basement with the children while MS took a shower upstairs.

As MS exited the shower, she heard the doorbell ring and expected her brother at the door. She wrapped a towel around herself and went to open the door. Instead of her brother, she saw Austria, her uncle by marriage, and let him in the house. MS and Austria describe the next events differently.

According to MS, Austria asked for bus passes that MS's father had left for him, and MS gave him the passes. Austria asked whether her parents were home, and MS told him that she did not know where they were. Austria then asked MS for a hug, and MS felt uncomfortable. She went into the kitchen, pretending to get something from the refrigerator, and Austria followed her.

MS testified that as she tried to open the refrigerator, Austria tried to grab her. MS resisted and used her legs to try to block him from touching her genitals. Austria touched her chest (over and under the towel) and touched her vagina with his hand. He also grabbed her arm while she was trying to push him away and hold the towel around herself.

MS escaped into the next room, and Austria continued to grab at her. She tripped and fell onto the ground, and Austria tried to touch her chest and vagina again. MS kicked Austria in the groin, and he got off her. Lomboy, still downstairs, heard a loud noise as if someone had fallen upstairs.

MS ran upstairs and locked herself in her bedroom. She testified that Austria knocked on her bedroom door and apologized, but she did not respond. Austria went downstairs to talk to Lomboy for a short conversation, and then left.

Shortly after he left, Austria called the house multiple times. MS did not answer the first few calls, but when she eventually answered the phone, Austria told her to lock the front door. MS was afraid that Austria was still in the house, and she stayed in her room.

When Natie returned home from her errands, she brought a friend

01  with her into the house.   After she had been home awhile, Natie
    saw MS and noticed that she looked as if she had been crying and
02  looked angry.   Natie thought MS could be angry with her, so she
    ignored her at first.   A few minutes later, MS pulled Natie into
03  another room and started sobbing as she described the assault.
    MS identified Austria as her assailant, and Natie noticed a bruise
04  on MS's arm.   Natie called the police, and the responding
    officer noticed that MS looked like she had been crying and had
05  wrapped herself in a warm blanket even though it was not cold.

06  Austria was arrested about a month after the assault. He was read
    his *Miranda*[] rights and agreed to talk to the police detective
07  about the incident.   He initially denied touching MS, but
    eventually said that he may have accidentally bumped against her
08  while he was at her house.

09  At trial, Austria claimed that he went to the house to get bus
    passes and that once MS gave him the passes, he left.   He
10  admitted that he called the house numerous times, but said he
    was worried he did not close the door all the way, so he wanted
11  MS to check the door.

12  *State v. Austria*, 2007 WL 1395420, at *1-*2 (Wash. Ct. App. May 14, 2007) (footnote

13  omitted).

14      A jury convicted Mr. Austria of taking indecent liberties by forcible compulsion, RCW

15  § 9A.44.100(1)(a), and he was sentenced to an indeterminate term of imprisonment of 58

16  months to life.   (Dkt. 12, Ex. 1, at 1, 5.)   On direct appeal, the Washington Court of Appeals

17  affirmed his conviction, *Austria*, 2007 WL 1395420, at *9, the Washington Supreme Court

18  denied both review and his motion to appoint an interpreter, (Dkt. 12, Ex. 9, at 1), and the

19  mandate issued on January 9, 2009, (Dkt. 12, Ex. 10, at 1).

20      Mr. Austria collaterally attacked his conviction through a state personal restraint

21  petition (PRP) in which he raised as federal constitutional violations two issues previously

22  addressed on direct appeal.   (Dkt. 12, Ex. 11.)   The Washington Court of Appeals dismissed

01  his PRP because Washington law does not permit petitioners to relitigate issues already

02  considered and rejected on direct appeal and because there was no suggestion that raising the

03  same issues under federal law would have altered the outcome.   (Dkt. 12, Ex. 12 at 1-2.)   The

04  Washington Supreme Court denied his motion for discretionary review based on Washington's

05  rule against relitigation and because his failure to show that an application of federal law would

06  have altered the outcome meant the interests of justice would not be served by accepting the

07  petition.   (Dkt. 12, Ex. 14, at 1-2.).   The PRP's certificate of finality issued on February 20,

08  2009.   (Dkt. 12, Ex. 15.)

09      On March 17, 2009, Mr. Austria brought a federal habeas petition under 28 U.S.C.

10  § 2254.   (Dkts. 1, 9.)   Respondent filed an answer on June 8, 2009.   (Dkt. 10.)   There has

11  been no further briefing and the matter is now ready for review.

12                                  **GROUNDS FOR RELIEF**

13      Mr. Austria's habeas petition sets forth the following grounds for relief:

14      1.  In violation of due process, there was insufficient evidence because the "to convict"

15          jury instruction required the additional element of proving that the complaining

16          witness MS intended to have sexual contact with Mr. Austria (hereinafter "Added

17          Element" claim), (Dkt. 9-2, at 10-14);

18      2.  In violation of the right to counsel, the trial court improperly denied Mr. Austria's

19          motion for substitution of counsel (hereinafter "Substitution of Counsel" claim),

20          (Dkt. 9-2, at 14-20); and

21      3.  In violation of the Confrontation Clause, the trial court admitted the complaining

22          witness MS's out-of-court statements under the excited utterance exception to the

01     hearsay rule (hereinafter "Excited Utterance" claim), (Dkt. 9-2, at 20-24).

02         **DISCUSSION**

03 **I.  Exhaustion of State Remedies**

04     The exhaustion doctrine requires a petitioner to provide the state courts with the

05 opportunity to rule on his federal habeas claims before presenting those claims to the federal

06 courts. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). A petitioner can satisfy exhaustion

07 by either (1) fairly presenting each federal claim to the highest state court, or (2) showing that

08 no state remedy is available. *See Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996).

09 "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must

10 read beyond a petition or a brief (or a similar document) that does not alert it to the presence of

11 a federal claim in order to find material, such as a lower court opinion in the case, that does so."

12 *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

13     Respondent concedes that Mr. Austria has exhausted his state court remedies as to

14 grounds two and three, i.e., the Substitution of Counsel and Excited Utterance claims. (Dkt.

15 10, at 5; *see* Dkt. 12, Ex. 7, at 1, 6-18 (petition for review to the Washington Supreme Court

16 referring to Substitution of Counsel claim); Dkt. 12, Ex. 13, at 7-8 (motion for discretionary

17 review to the Washington Supreme Court of the PRP referring to the Excited Utterance Claim.)

18 Respondent asserts, however, both that Mr. Austria failed to exhaust the Added Element claim,

19 *and* that the claim is barred by state law. (Dkt. 10, at 5, 11-14.) These dual assertions appear

20 to conflate the related doctrines of exhaustion and procedural bar.[1] If the petitioner has

21 _____

22    1As the Ninth Circuit has noted:
      The exhaustion doctrine applies when the state court has never

01  procedurally defaulted on a claim in the state courts then exhaustion is satisfied because no

02  remaining state remedy exists.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).   The

03  petitioner will also be procedurally barred from proceeding on the claim in federal court unless

04  one of the exceptions to procedural bar applies.   *See id.* at 750.

05       On direct appeal to the Washington Court of Appeals, Mr. Austria (represented by

06  counsel) presented the Added Element claim as a federal due process claim that the state must

07  prove every element of an offense beyond a reasonable doubt.   (*See* Dkt. 12, Ex. 3, at 7 (citing

08  *Jackson v. Virginia*, 443 U.S. 307, 316 (1979)).)   In his *pro se* petition for review of his direct

09  appeal and in his *pro se* motion for discretionary review of the PRP, he renewed this assignment

10  of error to the Washington Supreme Court.   (Dkt. 12, Ex. 7, at 1 (referring to Added Element

11  claim); Dkt. 12, Ex. 13, at 7 (referring to Added Element claim and citing *Jackson v. Virginia*

12  and *Burks v. United States*, 437 U.S. 1 (1978)).)   Mr. Austria has clearly exhausted the Added

13  Element claim by presenting it as a federal claim to the highest state court.   The relevant

14  _____

15            been presented with an opportunity to consider a petitioner's
             claims and that opportunity may still be available to the

16           petitioner under state law.   In contrast, the procedural default
             rule barring consideration of a federal claim applies only when a

17           state court has been presented with the federal claim, but
             declined to reach the issue for procedural reasons, or if it is clear

18           that the state court would hold the claim procedurally barred.
    *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (citations omitted and internal

19  quotation marks removed).   "Thus, in some circumstances, a petitioner's failure to exhaust a
    federal claim in state court may *cause* a procedural default," e.g., when a petitioner, to satisfy

20  the exhaustion requirement, must present his or claims to a court that would now find them to
    be procedurally barred.   *Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005).

21  Respondent does not suggest that Mr. Austria failed to present the Added Element claim to the
    state court in the first instance.   The Washington Court of Appeals addressed the Added

22  Element claim at length before rejecting it on procedural grounds.   *See Austria*, 2007 WL
    1395420, at *2-*4.

01     inquiry thus does not concern exhaustion but procedural bar, i.e., may this Court on federal

02     habeas review consider the Added Element claim on the merits or is it procedurally barred

03     based on independent and adequate state grounds.[2]

04     **II.    Standard of Review**

05             Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a habeas corpus

06     petition may be granted with respect to any claim adjudicated on the merits in state court only if

07     the state court's adjudication is "contrary to," or involved an "unreasonable application" of,

08     clearly established federal law, as determined by the Supreme Court.   28 U.S.C. § 2254(d).

09     Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court

10     arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if

11     the state court decides a case differently than the Supreme Court has on a set of materially

12     indistinguishable facts.   *See Williams v. Taylor*, 529 U.S. 362, 405 (2000).   Under the

13     "unreasonable application" clause, a federal habeas court may grant the writ only if the state

14     court identifies the correct governing legal principle from the Supreme Court's decisions but

15     unreasonably applies that principle to the facts of the prisoner's case.   *Id.* at 407-09.   In

16     addition, a state court's decision may be overturned only if the decision is "objectively

17     unreasonable."   *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).   When a state high court's

18     decision is summary in nature, a federal habeas court will "look through" the decision and

19     presume the high court adopted the reasoning of the lower court.   *See Ylst v. Nunnemaker*, 501

20     U.S. 797, 804-05 & n.3 (1991); *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

21             AEDPA's strict standard of review is relaxed to a certain extent when the state court

22

---

2 The Court addresses this question *infra* in the discussion of the Added Element claim.

01 reaches a decision on the merits but provides no reasoning to support its conclusion. *Pirtle v.*

02 *Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). Under such circumstances, a federal habeas

03 court independently reviews the record to see whether the state court clearly erred in its

04 application of Supreme Court law but will still defer to the state court's ultimate decision. *Id.*

05 When it is clear that the state court did not reach the merits of a properly raised issue, a federal

06 habeas court will review the issue de novo. *Id.* Under such circumstances, de novo review is

07 proper because the concerns about comity and federalism that arise when a state court reaches

08 the merits of a petition for post-conviction relief do not exist. *Id.* Nonetheless, factual

09 determinations by the state court are presumed correct and can be rebutted only by clear and

10 convincing evidence. *Id.* at 1168; 28 U.S.C. § 2254(e).

11 **III.    Petitioner's Claims**

12         The Washington Court of Appeals issued, on direct appeal, the last reasoned opinion

13 regarding the issues raised in Mr. Austria's habeas petition, and no state court thereafter, even

14 during the collateral PRP proceedings, saw fit to disturb that opinion's reasoning when the

15 claims returned in explicit, federal constitutional raiment. The Washington Court of Appeals

16 declined to consider the merits of the Added Element claim because "general principles of

17 waiver and a policy against misleading the courts" barred Mr. Austria from raising on appeal an

18 interpretation of the "to convict" jury instruction that contradicted assertions made to the trial

19 judge. *Austria*, 2007 WL 1395420, at *4. The Washington Court of Appeals reviewed the

20 merits of the Substitution of Counsel and Excited Utterance claims and rejected them. *See id.*

21 at *4-*8.

22         The state court adjudication of the Substitution of Counsel and Excited Utterance claims

01 was neither contrary to, nor involved an unreasonable application of, clearly established federal

02 law.   Murkier is whether an adequate state ground exists to bar federal review of the Added

03 Element claim.   The *Austria* decision, diverging strands of case law, and respondent's

04 invocation of the invited error doctrine, which the Washington Court of Appeals explicitly

05 chose not to apply, suggest that federal review on the merits should not be precluded.

06 Nonetheless, on a *de novo* review of the merits the Court finds that Mr. Austria's Added

07 Element claim does not suggest a due process violation.   The Court therefore recommends that

08 Mr. Austria's habeas petition be denied in its entirety.

09 **A.      Added Element Claim**

10         The Washington Court of Appeals cogently described the Added Element claim Mr.

11 Austria now raises in his habeas petition.   To understand the doctrinal tension provoked by this

12 claim, it is best to examine that discussion verbatim:

13                 Austria argues that the use of the word "intentional" in the "to
                   convict" instruction required the State to prove that the
14                 complaining witness intended sexual contact with the defendant.
                   Because the State did not prove this, Austria argues that his
15                 conviction should be reversed.

16                 The "to convict" instruction was proposed by Austria, and reads,

17                         To convict the defendant of the crime of indecent
                           liberties, each of the following elements of the
18                         crime must be proved beyond a reasonable doubt:

19                         (1) That on or about the 27th day of March, 2004,
                           the defendant knowingly caused [MS] to have
20                         intentional sexual contact with the defendant;

21                         (2) That this sexual contact occurred by forcible
                           compulsion;

22

01          (3) That the defendant was not married to [MS] at
            the time of the sexual contact; and

02          (4) That the acts occurred in the State of
03          Washington.

04              ....

05      The trial court noted that the instruction's use of the word
        "intentional" in the first element was ambiguous, but the
06      prosecutor stated that he did not object to the instruction because
        it conformed to language used in the information.   Defense
07      counsel also assured the trial court that no reasonable jury would
        read the instruction to mean that the crime required the
08      complaining witness to intend sexual contact.

09          THE COURT: [Prosecutor], does the State have
            any position on insertion of the term "intentional"
10          before sexual contact in the instruction which
            indicates what a person has to do to commit the
11          crime of indecent liberties?

12              ....

13          [Prosecutor]: Your Honor, I did a little bit of
            quick checking, and I believe that [defense
14          counsel's] position is well taken, that if we put
            something in, charge it in the Information, then I
15          think we are required to prove it, so I have no
            objection to his proposed modifications of the two
16          jury instructions.

17          THE COURT: My concern with the word
            "intentional," and I think your point is well taken,
18          is that it's a little bit ambiguous as to whose intent
            we're talking about here.

19
            I'll tell you why, the Pattern instruction says a
20          person commits the crime of indecent liberties
            when he knowingly causes another person who is
21          not his spouse to have sexual contact with him or
            another by forcible compulsion.   And then we
22          define what sexual contact is, and we define

01  sexual contact as the touching of the sexual or
other intimate parts of a person done for the
02  purpose of gratifying sexual desire of either party;
but if we stick the word "intentional" in there, it
03  may imply that it's intentional on the part of [MS]
as opposed to intentional from the standpoint of
04  Mr. Austria.  And that's the only reason I'm
hesitating, but I don't know why I'm even talking
05  about it if both parties are in agreement.

06  [Defense counsel]: The difficulty with lawyers,
they tend to-I can see the-I can see the judge's
07  reading of it, I don't think the jury is going to see
it that way, I think if you were to make an effort to
08  break it down, you could reach that conclusion, I
don't think it's reasonable to assume that the jury
09  will break it down.

10  When you look at it, it is the defendant who's
acting to have that sexual contact, and I think
11  that's the clear reading of it.  While there may be
some possible ambiguity to it, I don't think-I
12  don't think the likelihood of the jury looking at it
that way is significant at all.
13
THE COURT: All right. I'm going to get off the
14  bench and get that instruction, I'll be right back.

15  Verbatim Report of Proceedings (VRP) (June 28, 2005) at
147-49. Although Austria's defense counsel below assured the
16  trial court that the instruction could only be reasonably read to
mean that the defendant must intend the sexual contact, his
17  appellate counsel now argues that the instruction must be read
the opposite way-to require the State to prove that MS intended
18  the sexual contact.

19  The State argues that Austria should be prevented from making
this argument under the doctrines of invited error or waiver
20  because he made the opposite argument below.  Austria argues
that those doctrines do not apply here. Austria argues that invited
21  error applies only where a defendant's proposed instruction is
given to the jury, and then the defendant attempts to claim on
22  appeal that the instruction was erroneous.  *See State v. Medina,*

01    112 Wn.App. 40, 47 n. 11, 48 P.3d 1005 (2002) (holding that
      invited error doctrine does not apply because the defendant did
02    not argue that the "to convict" instruction he requested was
      erroneously given).   Thus, because Austria argues not that the
03    instruction was erroneous but that it added an additional
      unproved element to the crime, he claims the invited error
04    doctrine does not bar his argument here.

05    While it may be true that the invited error doctrine does not
      technically apply here, we conclude that the principle underlying
06    the doctrine-discouraging defendants from misleading trial
      courts-applies to prevent Austria from making this argument.
07    *See State v. Henderson,* 114 Wn.2d 867, 868, 792 P.2d 514
      (1990) (stating that without the invited error doctrine, there
08    would be a "premium on defendants misleading trial courts; this
      we decline to encourage.").   Below, Austria's counsel told the
09    trial court that the only reasonable reading of the instruction was
      that "intentional" referred to Austria's intent, and the closing
10    argument was consistent with that reading of the instruction.
      Here, Austria's counsel argues that the only reasonable reading
11    of the instruction was that "intentional" referred to MS's
      intent-an interpretation that trial counsel argued was
12    unreasonable.

13    Surely the State should have objected to the instruction as
      proposed and the trial court should not have given an instruction
14    that ambiguously defined the elements of a crime, but we cannot
      permit Austria to argue at trial that one interpretation of the
15    instruction is the only reasonable one, and then argue on appeal
      that the opposite interpretation is the only reasonable one.   We
16    conclude that under general principles of waiver and a policy
      against the misleading of trial courts, Austria's affirmative
17    representation below that the instruction did not create an
      additional element bars his argument here that an additional
18    element was added and not proved.

19    Moreover, the instruction requires that intentional sexual contact
      occur by forcible compulsion-but if the "intentional" referred to
20    intent on the part of MS (as Austria now argues), it would not be
      by forcible compulsion because she intended it to occur.   While
21    Austria offers a strained reading of the instruction (that he could
      have initially forced the contact and MS later acquiesced, or that
22    MS initially intended the contact and then changed her mind) to

01    argue that the instruction can make sense with "intentional"
      referring to MS, the instruction as a whole more logically
02    suggests that "intentional" refers to Austria because of the
      forcible compulsion element.

03
      Therefore, because Austria's counsel below argued that the only
04    reasonable interpretation of the instruction was that "intentional"
      referred to Austria, and because the language of the instruction as
05    a whole logically supports that interpretation, we refuse to
      consider Austria's argument on appeal that the opposite
06    interpretation is the only reasonable interpretation.

07 *Austria*, 2007 WL 1395420, at *2-*4.

08        Stated simply, Mr. Austria claims a due process violation because the "to convict" jury

09 instruction required the state to prove beyond a reasonable doubt that MS intended to have

10 sexual contact with Mr. Austria and, since all of the evidence adduced at trial suggested MS's

11 resistance to sexual contact, there was insufficient evidence of such intentionality.

12 Respondent's argument in response is twofold: (1) the Added Element claim is barred because

13 "[t]he Washington Court of Appeals expressly ruled that the invited error doctrine bars review

14 of the claim," (Dkt. 10, at 14); and (2) regardless, there is no constitutional error because the "to

15 convict" instruction did not add an element and the prosecution had no burden to prove an

16 element that does not exist in the statute, (*id.* at 15).   Respondent's first contention is

17 contradicted by the plain language of the *Austria* opinion.   Respondent's second contention is,

18 however, correct on the merits because there is no reasonable likelihood that the jury applied

19 the "to convict" instruction in a manner that violates the Constitution.

20              **1.      Procedural Bar/Adequate State Grounds**

21        In a habeas corpus proceeding, a federal court will not review a question of federal law

22 decided by a state court "if the decision of that court rests on a state law ground that is

01 independent of the federal question and adequate to support the judgment." *Coleman v.*

02 *Thompson*, 501 U.S. 722, 729 (1991). This doctrine "applies to bar federal habeas review

03 when the state court has declined to address the petitioner's federal claims because he failed to

04 meet state procedural requirements." *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir.

05 1995). If a petitioner has procedurally defaulted, a federal court will not review the claim

06 unless petitioner "can establish cause and prejudice or that a miscarriage of justice would result

07 in the absence of our review." *Moran v. McDaniel*, 80 F.3d 1261, 1270 (9th Cir. 1996).

08 "Procedural default is an affirmative defense, and *the state has the burden* of showing that the

09 default constitutes an adequate and independent ground for denying relief." *Scott v. Schriro*,

10 567 F.3d 573, 580 (9th Cir. 2009) (internal quotation marks removed) (quoting *Insyxiengmay v.*

11 *Morgan*, 403 F.3d 657, 665 (9th Cir. 2005)). To constitute an "adequate" state procedural

12 ground, "a state rule must be *clear, consistently applied, and well-established at the time* of

13 petitioner's purported default." [3] *Id.* (internal quotation marks removed) (quoting *Lambright*

14 *v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001)). "A state rule is considered consistently

15 applied and well-established if the state courts follow it in the 'vast majority of cases.'" *Id.*

16 (quoting *Dugger v. Adams*, 489 U.S. 401, 411 n.6 (1989)); *see Ford v. Georgia*, 498 U.S. 411,

17 424 (1991) (holding that an adequate and independent state procedural bar to the entertainment

18 of constitutional claims must have been firmly established and regularly followed by the time as

19 of which it is to be applied). State rules that are too inconsistently or arbitrarily applied to bar

20

21       3 For a state procedural rule to be "independent," the state law basis for the decision must not be interwoven with federal law. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir.

22 2003). The parties do not dispute the independence of the *Austria* court's reasons for rejecting the Added Element claim: it relied entirely upon state-law principles.

01 federal review generally fall into two categories: "(1) rules that have been selectively applied to

02 bar the claims of certain litigants . . . and (2) rules that are so unsettled due to ambiguous or

03 changing state authority that applying them to bar a litigant's claim is unfair." *Bennett v.*

04 *Mueller*, 322 F.3d 573, 583 (9th Cir. 2003) (internal quotation marks removed) (quoting

05 *Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir. 1996)).   As the United States Supreme

06 Court has noted, "[n]ovelty in procedural requirements cannot be permitted to thwart review in

07 this Court applied for by those who, in justified reliance upon prior decisions, seek vindication

08 in state courts of their federal constitutional rights."   *NAACP v. Alabama ex rel. Patterson*, 357

09 U.S. 449, 457-58 (1958); *see Ford*, 498 U.S. at 423 (quoting *NAACP v. Alabama* and citing

10 several cases for the same proposition).

11       Respondent has not met his burden to prove that the rules cited by the *Austria*

12 court—waiver and a general policy against misleading the courts—were clear, consistently

13 applied, and well-established at the time the *Austria* court applied them in declining to review

14 the merits of the Added Element claim.   Not only has respondent mischaracterized the basis

15 for the *Austria* decision, the *Austria* court's own review of the relevant authorities, Washington

16 case law, and respondent's briefing suggest the inadequacy of the state procedural grounds for

17 declining to review the merits of the Added Element claim.

18       Although respondent argues that Washington's invited error doctrine procedurally bars

19 Mr. Austria's Added Element claim,[4] the Washington Court of Appeals stated in carefully

20

_____

21       4 Although respondent never specifies whether a "procedural" or a "substantive" bar is
applicable, his argument and the *Austria* decision itself, in which the Court of Appeals declined
22 to reach the merits based on how and when the Added Element issue was raised, show that the
imposed bar was procedural.   *See Black's Law Dictionary* (8th ed. 2004) (defining "procedural

01  parsed language a different basis for declining to review the merits.   First, the *Austria* court

02  acknowledged that the invited error doctrine may not technically apply.   *Austria*, 2007 WL

03  1395420, at *3.   Then it noted that the principle *underlying* the invited error doctrine, which

04  discourages defendants from misleading trial courts, prevented Mr. Austria from making his

05  argument.   *Id.*   Finally, the *Austria* court specifically concluded "that under general principles

06  of waiver and a policy against misleading of trial courts, Austria's affirmative representation

07  below that the instruction did not create an additional element bars his argument here that an

08  additional element was added and not proved."   *Id.* at *4.

09      The *Austria* court was forced to confront overlapping state law doctrines: "law of the

10  case" and "invited error."   Under Washington's law of the case doctrine, jury instructions not

11  objected to become the law of the case.   *See State v. Hickman*, 954 P.2d 900, 902 (Wash.

12  1998).   "In criminal cases, the state assumes the burden of proving otherwise unnecessary

13  elements of the offense when such added elements are included without objection in the 'to

14  convict' instruction."   *Id.*   On appeal, a defendant may challenge the sufficiency of evidence

15  of the added element on this basis, even when the added element itself was not part of the

16  criminal statute.   *Id.*   Thus, in *State v. Hickman*, the state was required to prove that the

17  criminal defendant had committed insurance fraud in a particular county even though venue

18  was not a required element of the criminal statute.   *Id.* at 902-04.   In contrast, under

19  Washington's invited error doctrine, a "party may not request an instruction and later complain

20  on appeal that the requested instruction was given."   *City of Seattle v. Patu*, 58 P.3d 273, 274

21

22  law" as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as
   opposed to the law that defines the specific rights or duties themselves").

01  (Wash. 2002) (citation omitted and internal quotation marks removed).   The invited error

02  doctrine has been applied to preclude review of the merits in cases even where the "to convict"

03  instruction omitted an essential element of the crime and that error was of a constitutional

04  magnitude and was therefore presumptively prejudicial.   *Id.* (upholding the failure to refer to

05  obstruction as an element in a conviction for obstruction); *see, e.g., State v. Henderson*, 792

06  P.2d 514 (1990) (upholding the failure to specify the intended crime in a conviction for

07  attempted burglary); *State v. Summers*, 28 P.3d 780 (Wash. Ct. App. 2001) (upholding the

08  omission of the knowledge element for unlawful possession of a firearm).

09      The *Austria* court declined to apply the invited error doctrine to Mr. Austria's

10  contention because doing so might be reasonably construed to contradict *State v. Medina*, 48

11  P.3d 1005 (Wash. Ct. App. 2002).   *See Austria*, 2007 WL 1395420, at *3.   In *Medina*, the

12  Washington Court of Appeals found that the law of the case doctrine required the state to carry

13  a greater burden in proving first-degree kidnapping because the state had failed to object to a

14  "to convict" instruction that omitted a significant clause in the criminal statute.   *Medina*, 48

15  P.2d at 1009.   The *Medina* court rejected application of the invited error doctrine because

16  "[t]hat doctrine applies when a party requests an instruction and then argues on appeal that the

17  instruction should not have been given."   *Id.* at 1010 n.11.   It noted that "[defendant] does not

18  argue on appeal that the 'to convict' instruction was erroneously given, so the invited error

19  doctrine does not apply."   *Id.*

20      The *Austria* decision itself suggests that waiver and a general policy against misleading

21  the courts constituted a discretionary, prudential bar against consideration of the merits rather

22  than a clear, consistently applied, and well-established procedural bar.   *See, e.g., McKenna*, 65

01  F.3d at 1489 ("[T]he court's refusal to entertain [petitioner's] complaints on collateral review,

02  at best, represents a refusal to exercise discretion to hear the claim.   This is insufficient for the

03  State to invoke the procedural bar doctrine."); *Russell v. Rolfs*, 893 F..2d 1033, 1035-36) (9th

04  Cir. 1990) ("It is significant in our interpretation that the Washington Supreme Court decided

05  not to exercise its discretionary power-as contrasted with refusing to hear Russell's case

06  because of a procedural bar . . . .").   The *Austria* court cited a single case, *Medina*, in which a

07  defendant made a sufficiency of the evidence argument about a "to convict" instruction

08  amended by the law of the case doctrine.   *Austria*, 2007 WL 1395420, at *3.   *Medina*,

09  however, not only supports Mr. Austria's position, it also never discusses waiver and the

10  general policy against misleading the courts.   The *Austria* court cited an invited error doctrine

11  case to support its conclusion, *State v. Henderson*, 792 P.2d 514 (Wash. 1990).   *See Austria*,

12  2007 WL 1395420, at *3.       *Henderson*, however, makes no reference to the law of the case

13  doctrine and does not suggest that waiver and the general policy against misleading the courts

14  should be applied as an alternative to the invited error doctrine.

15           Respondent cites no cases that support applying waiver and the general policy against

16  misleading the courts to Mr. Austria's Added Element claim.   Respondent also does not

17  address why the law of the case doctrine would not apply to the "to convict" instruction at issue

18  here.   In *State v. Hickman*, the Washington Supreme Court set forth the broad scope of the law

19  of the case doctrine.   *Hickman*, 954 P.2d at 902-04.   The *dissent* argued that the defendant

20  waived any arguments regarding the sufficiency of the evidence of an additional element due to

21  his tardy assertion of the claim.   *Id.* at 904-07 (Talmadge, J., dissenting).   By referring to the

22  invited error doctrine, which the *Austria* court declined to apply, respondent merely

01  underscores the inadequacy of the state law grounds for procedurally barring consideration of

02  the Added Element claim upon federal habeas review.

03        The Court finds that no adequate state law grounds exist that would procedurally bar

04  federal habeas review of Mr. Austria's assertion of constitutional error with respect to his

05  Added Element claim.   The Court therefore considers the claim on the merits.

06  **2.      Examination of the Merits**

07        Because the Washington Court of Appeals did not reach the merits of the Added

08  Element claim, the Court reviews the issue de novo, presuming all factual determinations to be

09  correct unless rebutted by clear and convincing evidence.   *See Pirtle*, 313 F.3d at 1167-68.

10  Mr. Austria alleges a violation of due process because the prosecution failed to prove the

11  element added to the "to convict" instruction that the victim intended sexual contact.   This

12  argument fails on the merits because there is no federal constitutional right to have the state

13  prove an element that is unnecessary to the crime and a rational trier of fact could have found

14  the necessary elements of the crime beyond a reasonable doubt.

15        The critical inquiry on review of the sufficiency of the evidence to support a criminal

16  conviction is not simply to determine whether the jury was properly instructed, but "whether,

17  after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of

18  fact could have found the essential elements of the crime beyond a reasonable doubt."   *Jackson*

19  *v. Virginia*, 443 U.S. 307, 318-19 (1979).   "Even if there is some ambiguity, inconsistency, or

20  deficiency in the instruction, such an error does not necessarily constitute a due process

21  violation.   Rather, the defendant must show both that the instruction was ambiguous and that

22  there was a reasonable likelihood that the jury applied the instruction in a way that relieved the

01 State of its burden of proving every element of the crime beyond a reasonable doubt."

02 *Waddington v. Sarasaud*, 129 S. Ct. 823, 831, ___ U.S. ___ (2009) (citations omitted and

03 internal quotation marks removed).   The jury instruction is not viewed in isolation but

04 considered in the context of the instructions as a whole and the trial record.   *Id.* at 832.   It is

05 not enough that there is some "slight possibility" that the jury misapplied the jury instruction;

06 the pertinent question is whether the instruction by itself so infected the entire trial that the

07 resulting conviction violates due process.   *Id.* (internal quotation marks and emphasis

08 removed).

09         To the extent Mr. Austria seeks to vindicate his right to have Washington's law of the

10 case doctrine apply to require proof of an element that is not contained in the criminal statute,

11 there is no federal constitutional right to have elements *inessential* to the conviction proven

12 beyond a reasonable doubt.   *See generally Jackson*, 443 U.S. at 319.   The state courts

13 declined to apply the state-created law of the case doctrine here and "it is not the province of a

14 federal habeas court to reexamine state-court determinations on state-law questions."   *Estelle*

15 *v. McGuire*, 502 U.S. 62, 67-68 (1991).   No authorities support a federally-created right to

16 have the prosecution prove a misstatement of state law because the misstatement is contained in

17 the "to convict" instruction.

18         To the extent Mr. Austria argues that the "to convict" instruction was ambiguous

19 because it implied that the state was required to prove that MS intended to have sexual contact

20 with Mr. Austria in addition to, or instead of, proving that Mr. Austria intended to have sexual

21 contact with MS, the instruction was neither ambiguous nor did it infect the trial such that the

22 resulting conviction has been called into doubt.   As the *Austria* court noted, MS's testimony

01  suggested that she never intended to have sexual contact with Mr. Austria, and the instruction

02  itself required that intentional sexual contact occur by forcible compulsion.  *Austria*, 2007 WL

03  1395420, at *1-*2, *4.  There would be no forcible compulsion if MS intended the sexual

04  conduct to have occurred.  *Id.* at *4.  The "to convict" instruction as a whole more logically

05  suggests that "intentional" refers to Mr. Austria, and no rational juror, faced with the instruction

06  in light of the evidence presented at trial, would find otherwise.

07      The challenged "to convict" instruction contains the essential elements of the crime of

08  taking indecent liberties with forcible compulsion and a rational trier of fact could have found

09  those elements beyond a reasonable doubt.  The Court recommends that Mr. Austria's Added

10  Element claim be denied.

11      **B.    Substitution of Counsel Claim**

12      Mr. Austria contends that the trial court improperly denied his motion for substitution of

13  counsel in violation of his Sixth Amendment right to counsel.  The Substitution of Counsel

14  claim lacks merit because the trial court made a meaningful inquiry into the conflict between

15  Mr. Austria and his counsel and there is no indication that the conflict was so severe that it

16  prevented effective assistance of counsel.

17      The qualified right of choice of counsel applies only to persons who can afford to retain

18  counsel.  *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *Caplin & Drysdale,*

19  *Chartered v. United States*, 491 U.S. 617, 624 (1989); *Schell v. Witek*, 218 F.3d 1017, 1025 (9th

20  Cir. 2000) (en banc).  There is no suggestion that Mr. Austria could or wanted to retain

21  counsel.  Consequently, the trial court's denial of his motion for substitute counsel raises a

22  different question: whether the conflict between Mr. Austria and his attorney prevented

01 effective assistance of counsel. *See Morris v. Slappy*, 461 U.S. 1, 13-14 (1983) (holding that

02 the Sixth Amendment requires only competent representation and does not guarantee a

03 meaningful relationship between a defendant and counsel); *Schell*, 218 F.3d at 1026 (same).

04 The Ninth Circuit has applied the constructive denial of counsel doctrine to "cases where the

05 defendant has an irreconcilable conflict with his counsel, and the trial court refuses to grant a

06 motion for substitution of counsel." *Daniels v. Woodford*, 428 F.3d 1181, 1197 (9th Cir.

07 2005). For federal cases on direct appeal, the Ninth Circuit test for determining whether the

08 trial court should have granted a substitution motion is the same as the test for determining

09 whether an irreconcilable conflict existed. *Id.* In such cases, a federal court considers: (1) the

10 extent of the conflict; (2) whether the trial court made an appropriate inquiry into the extent of

11 the conflict; and (3) the timeliness of the motion to substitute counsel. *Id.* at 1198. On habeas

12 review, a federal court examines not whether a trial court "abused its discretion," but whether

13 this error actually violated constitutional rights in that the client-attorney conflict "had become

14 so great that it resulted in a total lack of communication or other significant impediment."

15 *Schell*, 218 F.3d at 1026. As to effective representation, judicial scrutiny of counsel's

16 performance is highly deferential, and "strategic choices made after thorough investigation of

17 law and facts relevant to plausible options are virtually unchallengeable." *Strickland v.*

18 *Washington*, 466 U.S. 668, 690 (1984).

19       The trial court evaluated Mr. Austria's motion for substitution of counsel in the

20 following manner:

21                    [Defense counsel]: Your Honor, Mr. Austria requested I set this
                   hearing to fire me. Perhaps the best approach, at this point, would

22                    be for him to address the Court.

01    THE COURT: I agree. Good morning, Mr. Austria.

02    THE DEFENDANT: Good morning.

03    THE COURT: Can you tell me what your issue is with [defense counsel] and his representation?

04    THE DEFENDANT: I don't trust him.

05    THE COURT: Why not?

06
07    THE DEFENDANT: Well, every time the two of us have a meeting, we cannot agree on things.

08    THE COURT: Like what?

09    THE DEFENDANT: Like dealing with the case; every time I talk to him, he tells me that this case is not (inaudible).

10
11    THE COURT: You know, Mr. Austria, one of the things that the attorney has to do is give you an honest assessment of the case;
12    and that includes giving you the bad news about it as well as the good news. Anything else?

13    THE DEFENDANT: So does that mean I can't replace him?

14    THE COURT: I haven't ruled yet. I just want to make sure you had an opportunity to give me more views on the subject.

15    THE DEFENDANT: Nothing more.

16
17    THE COURT: All right. Mr. Austria, I understand how you view the case; but [defense counsel] is an experienced attorney, well known and well able to deal with cases such as yours; and the
18    ultimate decision on cases where he is appointed by the Court is the Court's decision and not your individual decision. [Defense
19    counsel]?

20    [Defense counsel]: Your Honor, there was one thing I wanted to add. Well, Mr. Austria and I have had a number of conversations
21    regarding the best approach in the case; and I understand that may have caused some level of frustration for Mr. Austria. The
22    difficulty in this case arose during preparation for trial, and I

01                                   think Mr. Austria became frustrated with the process of going over material multiple times; and I think Mr. Austria and I can work well together if he understands that preparation for trial involves, perhaps, asking the same question multiple times. I would expect future problems only if Mr. Austria is unwilling to continue to sit down with me to discuss, perhaps for the seventh or eighth time, the details of the case.

THE COURT: Good point. What's the charge in this case, [defense counsel]?

[Defense counsel]: The charge is indecent liberties. The charge is indecent liberties, and the trial date is currently May 23rd.

[Prosecutor]: Right, this Monday.

THE COURT: Mr. Austria, [defense counsel]'s points are well taken; and, in fact, the point that he's willing to go over things multiple time testifies to his level of preparation; so you need to continue to work with him, and the motion is denied.

*Austria*, 2007 WL 1395420, at *5 (quoting Verbatim Report of Proceedings, May 17, 2005).

Mr. Austria has failed to show that his conflict with appointed counsel prevented effective assistance of counsel. The trial court made an appropriate inquiry into the extent of the conflict and found it to be inconsequential. As the Washington Court of Appeals noted, Mr. Austria was given an opportunity to air his concerns but did not elaborate beyond expressing a general mistrust of counsel and a failure to agree on the merits of the case. *Austria*, 2007 WL 1395420, at *5. Such vague allegations fall short of demonstrating an irreconcilable conflict that might suggest constructive denial of the right to counsel or deficient and prejudicial representation. *Strickland*, 466 U.S. at 687; *Daniels*, 428 F.3d at 1197.

The state court's adjudication of Mr. Austria's Substitution of Counsel claim was neither contrary to, nor involved an unreasonable application of, clearly established Supreme

01  Court precedent.   The Court recommends that Mr. Austria's Substitution of Counsel Claim be

02  denied.

### C.   Excited Utterance Claim

04      Mr. Austria argues that the Confrontation Clause of the Sixth Amendment was violated

05  because the trial court admitted as an excited utterance exception to the hearsay rule MS's

06  out-of-court statements to her mother.   (Dkt. 9-2, at 20-24.)   This argument is foreclosed by

07  established Supreme Court precedent.

08      The Confrontation Clause is not implicated when a declarant is available for

09  cross-examination about hearsay statements.   *Crawford v. Washington,* 541 U.S. 36, 59 n. 9

10  (2004) ("Finally, we reiterate that, when the declarant appears for cross-examination at trial, the

11  Confrontation Clause places no constraints at all on the use of his prior testimonial

12  statements."); *California v. Green*, 399 U.S. 149, 162 (1970) ("[W]here the declarant is not

13  absent, but is present to testify and to submit to cross-examination, our cases, if anything,

14  support the conclusion that the admission of his out-of-court statements does not create a

15  confrontation problem.").   MS testified at trial and was available for cross-examination.   The

16  trial court therefore did not violate Mr. Austria's right to confront his accuser by admitting

17  MS's out-of-court statements.

18      The state court's adjudication of the Excited Utterance claim was neither contrary to nor

19  an unreasonable application of Supreme Court case law.   The Court recommends that Mr.

20  Austria's Excited Utterance claim be denied.

### CONCLUSION

22      For the reasons discussed above, the Court recommends that petitioner's 28 U.S.C. §

01 2254 habeas petition (Dkt. 9) challenging his conviction and sentence for taking indecent

02 liberties by forcible compulsion be DENIED.   A proposed order accompanies this Report and

03 Recommendation.

04     DATED this 26th day of August, 2009.

05

06 _____

07 Mary Alice Theiler
United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22